Case number 17-2246, Anthony Cece et al. v. Wayne County et al., oral argument not to exceed 15 minutes per side. Jameel Akhtar, for the appellant, you may proceed. Thank you. For the Police's Honorable Court, I'm Jameel Akhtar. I represent the plaintiff appellants in this matter, and I've reserved three minutes for rebuttal. Your Honor, the plaintiffs are all career police officers, sergeants, lieutenants, and captains of the Wayne County Sheriff's Department in Detroit, Michigan. In order to be eligible for this early retirement, they had to have 20 years of service, and they were also, as an inducement to leave early, were guaranteed by way of memorandum of agreement and their existing contracts that they would not have to pay any premiums directed or to support their medical insurance for the rest of their lives. These 50-some police officers all entered into individual memorandums of agreement, and in paragraph 3, it states, Active employees in the bargaining unit who apply to retire after October 1, 2008, and retire on or before December 1, 2008, will be allowed to retire with the same health care plan contribution liability as individuals who retired on or before the issuance of the May 2, 2007, Act 312 Arbitration Award. Okay, so that agreement, though, was tied back to a previous agreement, and didn't the previous agreement contain an ability or a clause in there that allowed for a modification under certain circumstances? Yes, Your Honor, but our argument is that it's a question of fact as to whether or not that health and welfare plan applied, seeing that it was changed, and the officers in 2008 Isn't that a question of law? I know you say that's a question of facts. Sounds like a question of law to me. Why isn't it? It's a question of fact because the issue is what plan applied, the 2006 plan or the 1990 plan. The 1990 plan stated that the county has a right to make these modifications, whereas the 2006 plan specifically states at PGID 1577, the record below, this benefit plan is not intended to replace conflicting provisions of any collective bargaining agreement or other labor agreement. The labor agreement that they went out under just said one thing as it relates back to the contract that was in place prior to the Act 312 award being issued. And in Michigan, police and firemen have a binding arbitration on collective bargaining agreements, and that's what the Act 312 is all about. So the question is, what health and welfare plan did these people rely upon in making their determination to give up their careers and march off into retirement? So I believe it's a question of fact. Which health and welfare plan applied? The county could have very easily, when they drafted these memorandums of agreement, state that the health and welfare plan which was in effect as of the Act 312 arbitration award will apply. They didn't do that. It sounds, as Judge Norris just said, that you're admitting that it calls for a construction of contract interpretation modalities, and that would always be a question of law, wouldn't it? No, Your Honor, not with these facts. With these facts, our people were induced, based upon the contracts and the health and welfare plan that was in effect in 2008 when they decided, which stated that if there's a conflict between the health and welfare plan presently in existence and their right to retire without having to pay contributions towards their insurance, that this benefit plan is not intended to replace conflicting provisions of any collective bargaining agreement or other labor agreements. Are you arguing there's any ambiguity in any of these contracts? Well, there's ambiguity now because the county relied upon...  In these memorandums, it would have to be paragraph 3 of the original memorandum which states active employees in the bargaining unit who apply to retire on and after October 1st, 2008 will be allowed to retire with the same health care contribution liability. What does that mean? Can the court state with specificity that that means that the health and welfare plan that was in effect in 2004 is the controlling one and not the one that they retired under? That's the ambiguity. And we also have an argument of promissory estoppel. They were promised as an inducement to give up their careers in law enforcement. Was promissory estoppel raised as a claim? Yes, it was a brief, a specific brief that was filed for reconsideration of the court's original decision. But it wasn't alleged in any complaint or amended complaint? Not that I can recall, no, Your Honor. It is an element of contract law in Michigan, though. What is? Promissory estoppel. I would also point out to the court that we also had an argument dealing with the 42 U.S.C. 1983 as to whether or not under Michigan law these contracts became a property right and could not be denied absent due process. Article 9, Section 24 of the Michigan Constitution states that retirement benefits, vested retirement benefits, can only be changed, cannot be changed, and are considered to be contractual in nature, similar to many other states. I would also point out that... You're arguing the property interest was created by a state constitution? It's created by the contract which incorporates the state constitution because it's a retirement benefit. And retirement benefits are covered by Article 9, Section 24 of the Michigan Constitution. And more important, and mostly important, is the fact that in 2015, the county incorporated all post-retirement medical benefits into the retirement ordinance. And that's the McDonald argument that we raised. The county raised it as an affirmative defense. That's the McDonald settlement in the lawsuit which moved post-retirement medical from under Taggart and made it a vested benefit under pensions. If your breach of contract claim fails, does your due process claim also fail? Yes, because there's no contract then. Okay.   So you're not arguing an independent basis in the state constitution for the property interest. It's all tied to the contract itself. That's correct. Okay. I'd be intellectually dishonest with the court if I were to say it stands alone without the contract. It doesn't. So as to the last argument where the court, Soros-Ponte, argued that the court has to be mindful of the county's economic condition when it makes its decisions. I say that that is utterly wrong. That the court should not take into consideration the information in the news media as it relates to the county's economic conditions. Yes, when the case was argued, the county was in receivership. And a receiver was appointed and they were arguing that there are billions of dollars in red and so forth. I would only ask the court to keep an open mind on this issue. Within the next five days, the Michigan Employment Relations Commission will be ruling as to whether or not the county was in financial distress or not. And I would like to get that to the court's attention to consider. Because if Judge Tarnow, in fact, made his ruling based upon what he perceived the economic conditions of the county was, that was totally unfair. And I don't believe he can stand and muster as a reason for finding breach of contract what the potential outcome could be. I see I have time left. Thank you. Thank you. Good morning. Matthew McNaughton on behalf of the appellees. Your Honors, this case is about whether Wayne County may require plaintiffs to contribute to the cost of the premiums for their county provided health insurance. Plaintiffs filed this lawsuit claiming that they were promised premium free health insurance for life. But plaintiffs don't have any contractual language to support that position. The plaintiffs all retired under collective bargaining agreements that were amended by incentive agreements that gave them many benefits not provided by the CBAs. For example, they were allowed to retire earlier than they could have under the CBAs. They retired with higher pension benefits than the collective bargaining agreements provided. And they received their pension benefits immediately. The incentive agreements also provided the plaintiffs will be allowed to retire with the same health care plan contribution liability as individuals who retired before the institution of CBAs under Act 312 Arbitration Awards that required the retirees to begin contributing to the cost of their health insurance. premiums. And it's this contractual language that contradicts plaintiffs' claim that they were promised premium free health care for life. Instead, their obligation to contribute to the cost of their health insurance premiums was tied to the cost the retirees identified in the incentive agreements were required to pay. Do you argue that there is no ambiguity in the agreement? Because your adversary obviously says, sure, there's ambiguity in Paragraph 3, and he goes on to describe that ambiguity. Is the agreement ambiguous in any respect? No, Your Honor, the agreement is not ambiguous. The agreement says that they retire with the same health care contribution liability as these prior retirees. And those prior retirees retired under CBAs that incorporated the 1990 Health and Welfare Benefit Plan. And under the 1990 Health and Welfare Benefit Plan, there was a reservation of rights clause that provided that the county could change the health care benefits that those retirees received. And when this incentive plan was instituted, those prior retirees were not paying anything for the cost of their health insurance premiums. So the incentive retirees were also not required to pay for the cost of their health insurance premiums. But when the county, five or six years later, eventually did require contributions from the pre-Act 312 award retirees, it also required the incentive retirees to pay those insurance premiums as well. It's exactly what the incentive agreements provide. What about his argument that there's some language in the 2006 plan that applies here that would... I've written down my notes, not intended to replace conflicting provisions. Your Honor, the 2006 Health and Welfare Benefit Plan just isn't applicable at all. Because you have to look at who these incentive plan retirees were tied to. They were tied to the pre-Act 312 award retirees, and their benefits were governed by the 1990 Health and Welfare Benefit Plan. So these agreements specifically tied the incentive retirees to those prior retirees. And because those prior retirees' benefits were governed by the 1990 Health and Welfare Benefit Plan, when the county changed those prior retirees' benefits, so too did the incentive retirees' benefits change. And, Your Honor, the district court decided the case just on those facts. They found that there was no contractual basis for plaintiff's claims. And so the district court didn't address any of the defendant's other defenses. But even if the incentive agreements could be construed to promise premium-free health insurance, the contracts cannot permissibly be read to provide premium-free health insurance for life. They don't say that the plaintiff's premium contribution and liability is a lifetime benefit. And pursuant to the Supreme Court's decisions in CHN Industries v. Reese and M&G Polymers v. Tackett, there can be no presumption that this benefit was intended to be for life. Instead, the plain language of the agreement is control. And under Reese and Tackett and this Court's decision in Gallo v. Moen, if a contract has a general durational clause and does not expressly provide that the benefit is for life, then the Court is bound to apply the principle that contractual obligations cease when the contract terminates and hold that the contract does not provide benefits beyond its term. Now, the retirement incentive agreements themselves don't have a specific end date in them. But it's important to remember that the retirement incentive agreements were amendments to the 2008-2011 CBAs for those retirees that chose to take those incentives. And other than the specific amendments provided in the incentive agreements, the 2008-2011 CBAs apply to the plaintiffs. For example, it's undisputable that plaintiffs' other retirement benefits, like their health care plan options, coverages, co-pays, and deductibles, are covered by the 2008-2011 CBAs. So when those CBAs terminated, so did the rights of these retirees under the incentive agreements. Whatever right the plaintiffs had with respect to their health insurance premiums, those expired when their CBAs expired. And now I'll address the Section 1983 claim. Even if the plaintiffs had a valid contractual claim, their due process claim would still have to be dismissed. Plaintiffs' complaint says that they have a claim under 42 U.S.C. 1983 for unconstitutional deprivation of property interest without due process of law. But an essential element of a Section 1983 claim is that there be a constitutionally protected property interest. And not every deprivation of a property interest rises to the level of a constitutional claim. This Court has held that when a deprivation is a simple breach of contract, and if there's an adequate remedy at law for that breach of contract, a Section 1983 claim is inappropriate. In fact, this Court's recent case of Kaminsky v. Coulter, this Court said, our case law makes clear that a claim for due process violation does not lie where the thrust of plaintiff's argument is simply breach of contract. So the law is clear that a breach of contract remedy is adequate, whereas here the employee is alleging a deprivation of a property interest and a specific employment benefit where that benefit is easily defined. So where there's a pure economic benefit of employment, this isn't a claim to be addressed as a constitutional claim. Its remedy is simply a breach of contract claim, which they've also brought here. Comment on the argument that promissory estoppel applies here because the officers were induced to take this early retirement on the promise of lifetime benefits. You heard the argument, so respond. I did, Your Honor, and that's where I was going to go next. The plaintiffs didn't bring a promissory estoppel claim in any of their five complaints that they filed with the Court. They rely on a single paragraph in their complaint, and that paragraph is actually within their breach of contract claim as the basis for their promissory estoppel claim. And the alleged promise that plaintiffs rely on is just that they wouldn't have to pay anything for the cost of their health insurance premiums, which is exactly what these incentive agreements address. So there was no separate claim for promissory estoppel. There was just a breach of contract claim, and that leads directly to the reason why plaintiff's promissory estoppel claim has to fail even if they brought it. Under Michigan law, you can't bring an implied contract theory like promissory estoppel when you have a contract that addresses the very issue. And that's exactly what plaintiffs are trying to do here. They have brought a breach of contract claim saying that they were promised premium fee health insurance for life. They're concerned that that's going to fail, so they bring a promissory estoppel claim addressing exactly the same issue. They can't do that. And I don't know if I really need to address the state constitutional claim, since Mr. Akhtar has admitted that the claim is entirely based on the contract, but if your honors would look at the state constitutional provision that he's cited, it has nothing to do with the issues before the court here. Those issues deal with pension benefits. That's not what we're dealing with here. We're dealing with health insurance and retirement. And unless the court has anything more for me, I'll stand there. Apparently not. Thank you, sir. And sir, you'll have your full rebuttal time. Thank you, your honor. There's nothing in the record showing what happened to those people who retired prior to the Act 312 arbitration award. Were they treated in the same manner in which these 54 individuals were treated? Did they have their insurance premiums increased? The defendants have not brought any evidence to your attention. The only evidence in the record as to people who retired prior to that date, that being 2007, I'm sorry, 2004, is the McDonald Settlement. And the McDonald Settlement states retirees from this point forward are covered under the retirement ordinance for the purpose of medical insurance. That then creates a property right because it's by statute that they have this guarantee. There's no durational argument that they can make. And the individuals who retired under the 2008 contract that went into effect that allowed for these memorandums of agreement now have what is known as mirror benefits. And the mirror benefits, the clause in the contract states, and you have the contract as an exhibit, states that people who retire on and after 2008 shall have the same retirement benefits as active employees. Taggart is gone in Wayne County. When we put that language in the contract, the county understood Taggart was gone. And when they changed the ordinance in 2015, that created a property right. So for anybody who, had they just waited and retired when their time came up, they wouldn't be in this position. They would have the McDonald guarantees. There is no, for anybody who retired on and after 2008, they have mirror clauses. I would point out to the court that Judge Judith Levy in a lawsuit brought by the retirees also found that way. That there's no durational argument to be made any longer in Wayne County because people who retired under the 2008 and after contracts were covered by McDonald.  is that there is no evidence in the record to show that the people who retired prior to 2004 did not have their medical benefits changed the same as these individuals who retired in 2008. So I believe there's several arguments to be made that the clause is ambiguous and this should be sent back for a jury determination. I also note that the council did not make any reference to Judge Tarnow's sere sponte argument that he has to look at the condition of Wayne County. Thank you. Thank you, Your Honors. Council, thank you for your argument. The matter is submitted and we shall rule on it in due course.